# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 5:04CV041-H

| | |
|---|---|
| MICHAEL W. ROGERS and REBA L. ROGERS, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>UNITRIM AUTO AND HOME INSURANCE )<br>COMPANY d/b/a KEMPER AUTO AND )<br>HOME, AMERICAN MANUFACTURERS )<br>MUTUAL INSURANCE COMPANY AND )<br>LUMBERMANS MUTUAL CASUALTY )<br>COMPANY, )<br>)<br>Defendants. )<br>) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' "Motion for Summary Judgment" (document #15) and "Memorandum in Support ..." (document #16), both filed June 29, 2005; and the Plaintiffs' "Memorandum of Law in Opposition ... " (document #17) filed August 9, 2005. On August 17, 2005, the Defendants filed their "Reply ..." (document #18).

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant</u> the Defendants' Motion for Summary Judgment, as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is an action to recover damages for breach of contract, that is, an insurance policy, and related claims arising under state law. The Plaintiffs, Michael W. Rogers and Reba L. Rogers, own

and reside in a home located at 1037 Briarcliff Road, Mooresville, North Carolina, 28115 ("the house"), that at all times relevant herein was covered under a homeowner's insurance policy ("the policy") issued by Defendant American Manufacturer's Mutual Insurance Company ("American"), an Illinois insurance company.

Concerning the subject Motion for Summary Judgment, the policy contained provisions expressly excluding coverage for damage resulting from "constant or repeated discharge, seepage or leakage of water or the presence of condensation of humidity, moisture or vapor, over a period of weeks, months, or years" or from "faulty, inadequate or defective ... workmanship ... [or] materials." Defendants' "Memorandum in Support ..." at 5 (document #16). The Plaintiffs do not dispute the enforceability of these coverage exclusions generally, but contend that the damage to their home, discussed below, occurred suddenly and not as a result of faulty workmanship or materials or in any other manner that would be excluded from coverage by these provisions.

Taking the evidence in the light most favorable to the Plaintiffs, on August 11, 2003, Mr. Rogers heard the sound of running water emanating from underneath the house, but due to having recently suffered a heart attack, was not able to enter the crawl space to search for a leak. Instead, Mr. Rogers called Ronnie Thompson, a plumber, to investigate.

It is undisputed that on August 13, 2003, Mr. Thompson located and repaired what he described as a "leak" in the hot water line under the house. Mr. Thompson also reported to the Plaintiffs that the insulation was wet and that there might be other damage.

In his deposition, Mr. Rogers testified that "within a week" of these repairs to the hot water line, Mr. Rogers asked John Wilbur, a general contractor and personal friend of the Rogers, to investigate the area of the leak and determine what damage had been done. When Mr. Wilbur did

not promptly come to the house, Mr. Rogers called him a second time, but it is undisputed that Mr. Wilbur did not make an inspection until September 15, 2003. The record does not reflect what Mr. Wilbur discovered or reported to the Plaintiffs, other than that they allege that he discovered extensive damage to the floor system of the house as a result of the water leak.

In the light most favorable to the Plaintiffs, on September 16, 2003, they made a homeowner's insurance claim with American.

On October 9, 2003, Mr. Rogers made an oral statement that was tape recorded by one of American's adjusters, which as later transcribed reflects he stated that:

> [he] went back to the water department ... trying to figure out how long [the hot water line] had been leaking.... [The Plaintiffs'] August [2003] water bill was like $300.00. The [bills] before had been slightly higher.... But going back and talking with [personnel at the water department] to find out what [his] usage had been at that same period last year[,] it looks like the [hot water line] had probably started leaking sometime around May or June [2003] and it got progressively worst [sic] until August.

Exhibit 6 to "Deposition of Michael W. Rogers," attached as Exhibit A to Defendant's "Memorandum in Support ..." (document #16).

Although the Plaintiffs now contend, without citing any authority in support, that the Court should not consider Mr. Rogers' statement at this point in the proceedings, during his deposition, Mr. Rogers admitted that he gave the statement voluntarily and with his express consent that it could be recorded. See "Deposition of Michael W. Rogers" at 87-88, attached as Exhibit A to Defendant's "Memorandum in Support ..." (document #16). Moreover, later in the deposition, Mr. Rogers identified the transcript of the oral statement, and although he would not acknowledge that the transcription was accurate "word for word," he admitted that he had "no reason to believe" that the transcript was inaccurate. Id. at 105-06. Finally, Mr. Rogers admitted the essence of the statement,

that is, that he had reported initially to the Defendant that the hot water line had been leaking for three or four months prior to April 13, 2003, and contended only that he changed his opinion sometime after giving the statement. Id.

It is undisputed that American denied coverage on the Plaintiff's claim.

On March 9, 2004, the Plaintiffs filed their Complaint in the Superior Court of Iredell County, North Carolina, alleging claims for breach of contract, bad faith settlement of an insurance claim, and unfair and deceptive trade practices, and seeking damages in excess of $75,000, naming not only American, but also Unitrim Auto and Home Insurance Company ("Unitrim") and Lumbermans Mutual Casualty Company ("Lumbermans"), respectively, New York and Illinois insurance companies, as Defendants. As discussed below, there is no evidence that Unitrim or Lumbermans issued any relevant insurance policies and the Plaintiffs have abandoned their claims as to those Defendants.

On April 12, 2004, the Defendants removed the state court lawsuit to federal district court, alleging diversity subject matter jurisdiction. Removal has not been challenged and appears proper.

On December 1, 2004, which was their deadline for serving the reports of their expert witnesses, if any, the Plaintiffs served a list of their proposed expert witnesses, Mr. Wilbur and Mr. Thompson, along with another potential expert witness, Randy Down, but did not provide an expert report from any of their proposed experts.

On February 9, 2005, the Defendants filed their Motion to Strike the testimony of Mr. Wilbur, Mr. Thompson, and Mr. Down, citing the Plaintiffs' failure to serve expert reports as the basis for the motion.

On February 11, 2005, the Plaintiffs sent a copy of Mr. Wilbur's written estimate of the costs

of repairs to defense counsel. In their Response to the Defendants' Motion to Strike, the Plaintiffs stated that none of their experts had prepared a report, but were available for depositions; that Mr. Wilbur would testify as to what he saw and did during his inspection as well as give his opinion as to the cause of the damage and cost of repairs to the Plaintiffs' house; that Mr. Thompson would testify only as to what he saw and did when he repaired the water line; and that the Plaintiffs abandoned Mr. Down as an expert witness.

On April 1, 2005, the Court <u>granted in part</u> and <u>denied in part</u> the Defendants' Motion to Strike, that is, the Plaintiffs were allowed to present Mr. Wilbur as both an expert and fact witness and Mr. Thompson as a fact witness, but Mr. Down's expert testimony was excluded. <u>See</u> "Memorandum and Order" at 2-3 (document #13).

On June 29, 2005, the Defendants filed their Motion for Summary Judgment. In addition to portions of Mr. Rogers' deposition, discussed above, the Defendants submitted an Affidavit from their expert, Jeff D. Sellers, who inspected the house and concluded that the leak was the result of the use of faulty material, that is, polybutylene pipe, in the construction of the hot water line. <u>See</u> Exhibit E to Defendant's "Memorandum in Support ..." (document #16).

On August 9, 2005, and after receiving from the Court an informal extension of time in which to do so, the Plaintiffs, though their counsel, filed a Memorandum in Opposition, which other than reciting the standard of review, cites no authority and includes no affidavits, discovery responses, exhibits, or other evidence in opposition to the Defendants' motion. Rather, the Plaintiffs' sole contention is that Mr. Rogers' unsupported opinions that the leak occurred "over a short period of time," but did not result from faulty workmanship or materials, creates an issue of material fact sufficient to survive summary judgment.

5

In their opposition brief, the Plaintiffs concede that American was the sole insurer of their home and abandon their claims as to Unitrim and Lumbermans. Moreover, as the Defendants point out in their Reply, the Plaintiffs have made no argument concerning their bad faith claim, effectively abandoning it as well. Accordingly, the Defendants' Motion for Summary Judgment will be <u>granted</u> as to all claims against Defendants Unitrim Auto and Home Insurance Company and Lumbermans Mutual Casualty Company and as to the Plaintiffs' bad faith settlement of insurance claim cause of action against American.

Concerning the Plaintiffs' remaining breach of contract and unfair and deceptive trade practices claims against American, the Defendants' Motion for Summary Judgment has been fully briefed and is, therefore, ripe for disposition.

## II. <u>DISCUSSION</u>

### A. <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and. . . the moving party is entitled to a judgment as a matter of law." Accord <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and,

in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

### B. Breach of Contract Claim

It is well settled in North Carolina "that an insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." Harrelson v. State Farm Mut. Auto. Insurance Co., 272 N.C. 603, 609, 158 S.E.2d 812, 817 (1967). Accord Stanback v. Westchester Fire Ins. Co., 68 N.C.App. 107, 114, 314 S.E.2d 775, 779 (1984).

In coverage cases, the insured has the initial duty of showing that the subject damage is within the language of the insurance policy. Duncan v. Cuna Mut. Ins. Society, ___ N.C.App. ___, ___, 614 S.E.2d 592, 594-95 (July 2, 2005). "Once it has been determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." Id., citing Hobson Construction Co., Inc. v. Great American Ins. Co., 71 N.C.App. 586, 590, 322 S.E.2d 632, 635 (1984).

Notwithstanding the Plaintiffs' unsupported contentions to the contrary, an insured's tape-recorded statements to an insurance adjuster may be offered as evidence that an injury or alleged

7

damage is not covered under the terms of the policy.  Hoffman v. Great American Alliance Ins. Co., 166 N.C.App. 422, 431, 601 S.E.2d 908, 914 (2004) (plaintiff's previously-recorded statement considered in granting insurer's motion for summary).  Accord Suggs v. Whitaker, 152 F.R.D. 501, 507 (M.D.N.C. 1993) (where defendant insurance company intended to offer plaintiff's prior recorded statement for impeachment purposes, plaintiff entitled to compel production of the statement during discovery).

In Hoffman, the existence of coverage under an uninsured motorist policy hinged on the factual question of whether the plaintiff's vehicle had been struck by an unidentified vehicle.  166 N.C.App. at 431, 601 S.E.2d at 914.  Where there was no physical or other evidence that a collision had even occurred and the plaintiff had given a "recorded statement [taken] within a month after the accident, [in which he] expressed doubt whether [his vehicle] had been struck at all," his subsequent statement that he had collided with an unidentified vehicle was insufficient to create an issue of material fact and summary judgment in favor of the insurance carrier was proper.  Id.

Applying these legal principles to the facts in this case taken in the light most favorable to the Plaintiffs, they have failed to raise an issue of material fact as to their breach of contract claim.

American does not dispute that the Plaintiffs' home was damaged at a time when it was covered under American's homeowner's policy and, accordingly, the Plaintiffs have met their initial burden of proof of showing that the policy "embraces the particular claim or injury."  Duncan, ___ N.C.App. at ___, 614 S.E.2d at 594-95.  The Defendant has submitted evidence, however, that the Plaintiffs' loss falls within the policy exclusions quoted above because the damage was caused by a water leak occurring over "weeks or months" and/or faulty workmanship or materials, that is, the insured's October 9, 2003 statement that the leak occurred over a period of three to four months,

8

and Mr. Sellers' opinion that the leak resulted from the use of substandard piping in the original construction of the house.

Rather than submit a supporting opinion from Mr. Wilbur, their expert, or some other evidence sufficient to create an issue of material fact as to whether the policy exclusions apply, the Plaintiffs have elected to rely solely upon Mr. Rogers' revised opinion that the water leak occurred suddenly, and his similarly unsupported opinion that the leak did not result from a faulty pipe, precisely the "mere scintilla of evidence" that is insufficient to overcome a motion for summary judgment. Liberty Lobby, Inc., 477 U.S. at 249 (party opposing summary judgment may not rest upon mere allegations or denials). Accord Hoffman, 166 N.C.App. at 431, 601 S.E.2d at 914 (in absence of any other favorable evidence, plaintiff's subsequent recantation insufficient to overcome previously-recorded statement that there had been no collision).

In short, even taking the evidence in the light most favorable to the Plaintiffs, the Defendants have met their burden of proof of establishing that the alleged loss is excluded from coverage, and their Motion for Summary Judgment will be granted as to the Plaintiffs' breach of contract claim.

### C. Unfair and Deceptive Trade Practices Claim

Having concluded above that even in the light most favorable to the Plaintiffs, their loss was excluded from coverage under American's homeowner's policy, their claim for unfair and deceptive trade practices must also necessarily fail. See Central Carolina Bank & Trust Co., v. Security Life of Denver Ins. Co., 247 F.Supp.2d 791, 800 (M.D.N.C. 2003) (where insurer had reasonable basis for denying coverage, insured could not recover on claim for unfair and deceptive trade practices).

9

Moreover, because Mr. Rogers initially gave a statement that the water leak occurred over three to four months (which would have excluded coverage), even assuming arguendo that the coverage issue ultimately had been resolved in the Plaintiffs' favor, American's failure to pay the disputed claim does not come close to the level of egregious conduct necessary to support an unfair and deceptive trade practices claim. Id. See also Sara Lee Corp. v. Quality Manufacturing, Inc., 201 F. Supp. 2d 608 (M.D.N.C. 2002) (where defendant allegedly had "superior position" and "dictat[ed] terms" to plaintiff, and deliberately concealed that it was building its own shirt factory pursuant to a plan to terminate plaintiff's contract to produce the same products, court properly dismissed unfair and deceptive trade practices claim); Speedway Promoters, Inc. v. Hooter's of America, Inc., 123 F. Supp.2d 956, 965 (W.D.N.C. 2000) (large corporation's alleged heavy-handed, intentional breaches of contract with a small business not sufficient to constitute "substantial aggravating circumstances" necessary for unfair and deceptive trade practices claim, but rather only "amount[ed] to run-of-the-mill breach of contract"); and Horack v. Southern Real Estate Co. of Charlotte, Inc., 150 N.C. App. 305, 310, 563 S.E.2d 47, 51 (2002) ("mere breach of contract does not constitute an unfair or deceptive trade practice").

For these reasons, the Defendants' Motion for Summary Judgment must also be granted as to the Plaintiffs' unfair and deceptive trade practices claim.

### III.  ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED**:

1. The Defendants' "Motion for Summary Judgment" (document #15) is **GRANTED** and the Plaintiffs' Complaint is hereby **DISMISSED WITH PREJUDICE.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

**Signed: August 19, 2005**

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge